OPINION OF THE COURT
Frank S. Rossetti, J.
This claim is for the State’s “wrongful and unlawful taking and confiscation and subsequent loss/or damage” to personal property of claimant, to wit, a 35-foot Wheeler pleasure craft boat and miscellaneous items thereon.
*1090 On July 3,1975 claimant was contacted by a State Police sergeant with respect to an investigation of the homicide of an acquaintance of Mr. Terranova. The sergeant was a member of the State Organized Crime Task Force. He requested claimant meet him at the Rockland County District Attorney’s office in New City. They so met that day and, in the course of the questioning of claimant, he signed a consent for the search of his boat, the above-noted 35-foot Wheeler pleasure craft.[1]
The next day (July 4, 1975), claimant and his wife went with two officers of said task force to the Imperial Yacht Club in New Rochelle where claimant’s boat was docked. The officers conducted a search of the boat, but requested that it be taken the next day to Governors Island (in New York City) for further examination. Claimant consented to this (apparently orally), but allegedly with the understanding that the boat would be returned to him after two days.
On July 5, 1975, claimant drove the boat to Governors Island (accompanied by one of the State’s officers) and left it there, giving the keys to the boat to a State officer. On July 7, 1975, Mr. Terranova attempted to obtain return of the boat, but was told that tests planned for it had not been conducted because of the July 4 weekend. Upon the request of one of defendant’s officers, claimant signed another consent, for “further test and examination of said boat.” This consent was allegedly also given with an understanding that the boat would be returned after a couple of days, on July 10, 1975. On said latter date, claimant again requested return of his boat, but was told by one of the State’s officers that they were not through with their testing and examination. At trial, the State introduced a search warrant dated July 10, 1975 which authorized search and seizure of claimant’s boat. This presumably formed the basis for the State’s continued possession of the boat after July 10.
Claimant thereafter made continued requests for return of his boat, but to no avail. In addition, Mr. Terranova retained counsel who also attempted to get the boat back *1091 and then apparently served a summons and complaint (dated September 22,1975) on the State Attorney-General. The complaint sought return of the boat or damages and, although it was encaptioned in the Court of Claims, there is no evidence of any filing of said complaint with this court. Thus it was not effective as a claim and did not commence an action herein. (See Court of Claims Act; § 10, subd 3; § 11.)
Contemporaneously, on October 7, 1975, claimant’s attorney commenced an article 78 proceeding in Rockland County Supreme Court for return of the boat. Pursuant to an October 14,1975 order of that court, claimant requested a hearing therein, but, prior to the scheduled date, defendant agreed on November 12, 1975 to return the boat. On November 14, 1975, Mr. Terranova went to the Nassau County Police Department Marine Division at Hewlett Bay, Long Island, where the boat was. There, accompanied by members of said police department, claimant found his boat damaged and items previously thereon (i.e., prior to July 4, 1975) either missing, destroyed or damaged. The engine was inoperable and the boat was towed to the aforesaid Imperial Yacht Club two days later. The claim at bar was thereafter filed February 6, 1976.
Two preliminary issues were raised by defendant, to wit, claimant’s ownership of the boat and the timeliness of his claim at bar. The former involves Mr. Terranova’s capacity to sue and the latter this court’s subject matter jurisdiction.
The sole basis for defendant’s objection to claimant’s ownership was the fact the boat’s State registration was in the name of Mr. Terranova’s former brother-in-law. The State argued that this raised a presumption of the latter’s ownership, citing Young v Seckler (74 AD2d 155). Assuming the presumption referred to in that case is applicable to boats and the circumstances herein,[2] it is nonetheless a rebuttable one (see 8 NY Jur 2d, Automobiles and Other *1092 Vehicles, § 750, p 458; 3 Encyc NY Law, Automobiles and other Motor Vehicles, § 1982, p 253; 27 ALR2d 167, §4), and we find claimant has clearly presented sufficient evidence to overcome it.
Chief among this evidence was the testimony of said former brother-in-law to the effect that the boat was originally jointly held only because the loan for the boat was in his name. He stated claimant was the one who repaid the loan and freely admitted that he (the former brother-in-law) never used the boat, exercised any control over it or paid any bills for it. He also concurred in Mr. Terranova’s testimony that the registration application was filed jointly, but the registration came back with only his name on it. It was indicated, without contradiction by defendant, that it was the State’s policy to put the registration for jointly owned boats only in the name of the joint owner first listed on the registration application. Claimant’s former brother-in-law additionally testified that he did not consider himself a half-owner of the boat and the evidence clearly established that Mr. Terranova paid all bills connected with the boat. Indeed, defendant’s officers obviously treated claimant as the owner thereof and the two search warrants herein named him as “the owner of the boat.”
Therefore, on all the evidence, particularly the testimony of the former brother-in-law (cf. 3 Encyc NY Law, Automobiles and other Motor Vehicles, § 1762, p 56), we find claimant has established his ownership of the boat and hence his capacity to sue (see Landes v Koliski, 201 NYS2d 911, 912 [App Term, 2d Dept, 1960]). In any event, even if Mr. Terranova were- not deemed owner of the boat, he unquestionably could be deemed a bailee thereof, and thus a proper party plaintiff at bar. (See 3 Encyc NY Law, Automobiles and other Motor Vehicles, § 1762, pp 56-57; 9 NY Jur 2d, Bailments and Chattel Leases, §§118, 119, 142, p 172.)
The second prelusive issue, timeliness, calls for consideration of not only the nature of the claim, but also the circumstances inhering therein. As hereinafter indicated, this is seemingly a case of first impression and although traditional torts are applicable, they must be applied to an *1093 atypical fact situation. As explained below, the State here was essentially an implied-in-law, sole benefit bailee visa-vis claimant and his boat. Defendant had the right to retain the boat to search it for evidence, but the search had to be conducted in a reasonable manner. To the extent it was not, the State is liable (see pp 1093-1095, infra.) However, until the boat was returned to him, claimant had no way of knowing there even existed any unreasonable aspect of the search, much less the damages resulting therefrom. Defendant’s duty to conduct its search reasonably was a continuing one and, while some items of unreasonable damage may have occurred at various times during the State’s custody of the boat (other items of damage appear to have resulted from cumulative effects of defendant’s unreasonable conduct), such damage and the existence of a claim therefor were not ascertainable to claimant until the State’s proper custody ceased and the boat was returned to him. He could not obtain return of the boat prior to that by demand or otherwise since the State had the right to keep it as long as was necessary for a reasonable search. Hence it was not a bailment where accrual of a cause of action thereon could be brought about by demand. (See, e.g., 9 NY Jur 2d, Bailments and Chattel Leases, § 141, p 171.) Nor can accrual be measured from the times of various unreasonable State acts or omissions resulting in compensable damage (see, e.g., id., § 141, pp 171-172) since, as indicated above, not all such damages occurred at discrete or ascertainable times and those that may have were not ascertainable to claimant until he could inspect the boat upon its return to him. We thus find the date of that return, November 14, 1975, to be the date when damages were ascertainable and such is the date when this claim accrued. (See Taylor v State of New York, 302 NY 177, 185, affg Moltion v State of New York, 277 App Div 835, affg 193 Misc 850, 855-856; Bronxville Palmer v State of New York, 36 AD2d 647, 648; Waterman v State of New York, 19 AD2d 264, 266.) The claim’s filing within 90 days thereof (on February 6, 1976) was therefore timely. (See Court of Claims Act, § 10, subd 3.)
This brings us to the main issue — the legal basis for the State’s liability. As portended above, this case appears *1094 to be one of first impression in this State. The legal question is whether the State can be held liable for damages attending a legally authorized search, but one which is unreasonably conducted. The parties presented no cases dealing directly with this issue and the court’s research similarly failed to uncover New York cases in point. Thus we believe resort to first principles is called for.
As intimated, the State was statutorily authorized to search and seize claimant’s boat under warrant in the course of its criminal investigation. (See CPL 690.10.) Presumably this right flows from the State’s police power and its exercise thereof for the welfare of its citizens by the enforcement of its criminal laws. However, this power must be exercised reasonably (see, generally, 16 CJS, Constitutional Law, § 195) and with a scrupulous regard for constitutionally guaranteed rights (see id., § 196). Obviously relevant here is the constitutional right to be free from unreasonable searches and seizures. (See US Const, 4th Arndt; NY Const, art I, § 12.)
In this case, the concept of reasonableness comprehended that the State exercise reasonable care to safeguard the property in its custody and inflict or allow only such damage as was reasonable for the purposes of the search and seizure. (Cf. 79 CJS, Searches and Seizures, § 83, pp 905-906.) This also included retaining claimant’s property only as long as was reasonable for said purposes (cf. id.). There is no indication the property seized from claimant was contraband or property otherwise subject to forfeiture to or destruction by the State. Indeed, from the circumstances surrounding the search and seizure, particularly the two warrants issued therefor, it is clear the purpose was to attempt to uncover potential evidence pertaining to the subject murder investigation (see CPL 690.10, subd 4). Although it appears from defendant’s evidence that fairly intensive searching and testing were conducted, the State has not claimed or established that any of Mr. Terranova’s property was or contained proper evidence. Therefore, upon completing said searching and testing arid finding no proper evidence, the State had no further right to retain *1095 claimant’s property.[3] Its duty then was to return the property (cf. n 3 below). The confluence of the above State duties of safeguarding and returning claimant’s property leads us to conclude that the State was an implied-in-law bailee thereof under the circumstances at bar. (See 9 NY Jur 2d, Bailments and Chattel Leases, § 29; see, also, §§ 79, 81, 112.)[4] As such, it is liable in either negligence or conversion for those damages not reasonably related to evidence searching and testing which the State unreasonably allowed to occur or intentionally caused. (See, generally, 9 NY Jur 2d, Bailments and Chattel Leases, §§ 47, 84, 91, 106, 139, 140, 154.)
We find without merit defendant’s contention that its police “were immune from any damage caused by the warrant”, under the authority of Ford v State of New York (21 AD2d 437). In the first place, all the damages the State is liable for here are not damages “caused by the warrant.” Rather, said damages arose from State conduct outside the scope of and not authorized by the warrant.
Secondly, the apparent basis for this contention, i.e., that a warrant protects those executing it from liability for damages caused by the execution thereof (see, e.g., 22 NY Jur, False Imprisonment, §§ 51, 52), is not apposite to the liability found here. Claimant does not contend there was not probable cause for the issuance of a warrant or a search and seizure thereunder. No issue was presented as to whether it was proper in the first place to conduct a search and seizure (we have assumed it was). Instead, the basis for defendant’s liability is the unreasonable manner in which the State allowed the search to be conducted. Just as the State can be liable for the use of unreasonable, excessive force in making an arrest, even though the arrest is proper *1096 and legally authorized (see, generally, Lippert v State of New York, 207 Misc 632, 636; 6 NY Jur 2d, Assault — Civil Aspects, § 7), we are finding the defendant liable here for unreasonably allowing damage in making a search, even though the search was similarly proper and legally authorized. The State can be held responsible where it does not have reasonable grounds to conduct a search at all (see 79 CJS, Searches and Seizures, § 99), and pro tanto parity of reasoning would seem to dictate that it can also be liable where aspects of a search are unreasonable, such as the manner in which it is conducted. Certainly, unreasonable conduct in the course of performing a police investigation function is not protected by any absolute sovereign immunity (cf., e.g., Cunningham v State of New York, 71 AD2d 181, 183-184; see, also, Jones v State of New York, 33 NY2d 275, 279-280). Hence we find no impediment to liability from the involvement of a warrant or of the police (see, generally, 55 NY Jur, State of New York, § 202).
Having determined there is a proper legal basis for State liability, we also find there is proper factual support therefor. Due to defendant’s status as bailee, it was incumbent on the State to explain the unreasonable damage to claimant’s property once claimant made out a prima facie case by showing delivery of his property to the State in good condition and return therefrom in a condition not consistent with a reasonable search. (See 9 NY Jur 2d, Bailments and Chattel Leases, §§ 108, 145, 147.) Defendant failed to present sufficient evidence to rebut claimant’s said prima facie case (see id., § 149) and thus failed to meet its burden of going forward (see id., § 148). The only evidence defendant presented to attempt to meet this burden was test results of items taken from the boat. However, these mute records by themselves, without interpretation and explanation, did not adequately show that the substantial damage and loss sustained arose from some cause other than tortious State conduct. There was testimony from a former Assistant Attorney-General connected with the subject investigation (he prepared the two warrants), but he did little more than indicate that the investigation continued up to the return of claimant’s boat. He offered no explanation for the damage to it. For this unexplained damage, we *1097 therefore find defendant responsible. From the nature of that damage, it appears most of it arose from the neglect of the State to properly secure and protect the boat from weather and other foreseeably detrimental agents, but, of course, it is not necessary for the court or claimant to explain the cause of each and every item of compensable damage. That was the State’s responsibility and it totally failed to meet it.[5]
The final issue is the amount of damages. The general rule is that the measure of damages in a bailment of personal property is the difference in the fair market value thereof in its condition as delivered (to the bailee) versus its condition as returned. (See 9 NY Jur 2d, Bailments and Chattel Leases, § 154, pp 191-192; see, also, 13 NY Jur, Damages, § 95; 2 Encyc NY Law, Automobiles and other Motor Vehicles, § 1Ó22; 10 Encyc NY Law, Damages, § 872.) The cost of repairs may be considered (see 9 NY Jur 2d, Bailments and Chattel Leases, § 154, p 192), but the loss in fair market value is the pre-eminent measure of damages unless total repair costs are less than said loss (see 13 NY Jur, Damages, § 98; 2 Encyc NY Law, Automobiles and other Motor Vehicles, § 1022; 10 Encyc NY Law, Damages, § 874).
Here, claimant’s expert testified to a fair market value of $12,000 to $13,000 for the boat in its condition before its seizure and a value of $3,000 to $4,000 on its return four months later. Mr. Terranova’s testimony also indicated he spent over $16,000 in improvements to the boat from the *1098 time of its purchase in 1968 (for $2,000) up to its seizure in 1975.[6] However, without any indication of the depreciation involved with respect to the various improvements, little weight could be given to that expense as an accurate indicia of value. (See Mullen v Sinclair Refining Co., 32 AD2d 1000, 1001.) Of course, it does provide some support for claimant’s expert’s before value estimate. Defendant also presented an expert, but he only testified to an after value of $4,000 and offered no opinion on before value.[7]
As to repair costs, claimant testified to what the value of or what he spent on the various items or parts of his boat and this evidence indicated totals of at least $2,000 in destroyed property, over $1,400 in lost property, almost $3,700 in damaged property and over $3,900 in repairs, as per claimant’s bill of particulars. This indicates a total replacement or repair cost of $11,000. Such evidence thus also provides support for his expert’s $8,000 to $10,000 estimate of loss in fair market value, but, as indicated above, it does not displace same as the measure of damages since it is greater than said loss. Also, it was again unclear to what extent depreciation entered into claimant’s $11,000 figure. (See Mullen v Sinclair Refining Co., supra.) Therefore, from the foregoing and all the evidence, we find a $9,000 loss in market value, from claimant’s appraiser’s value estimates, to be a fair and reasonable measure of the damage to claimant’s boat.
The damage to the boat, however, is the only one of the various items of damage requested by claimant that we find properly awardable.[8] Chief among the items we find not awardable are damages for loss of the use of claimant’s boat, either during all or part of the State’s custody thereof or thereafter, during the ostensible period of claimant’s repair of the boat. In a proper case, such loss of use *1099 damages may be recoverable (see 13 NY Jur, Damages, §§ 103, 105; 2 Encyc NY Law, Automobiles and other Motor Vehicles, § 1024; 10 Encyc NY Law, Damages, §§ 875, 916), but here claimant has not presented adequate evidence of either the propriety or amount thereof.
As mentioned, defendant had the right to retain claimant’s boat as long as was necessary to reasonably conduct its search and seizure. Claimant failed to sufficiently demonstrate what time period was reasonable for the State to keep his boat for that purpose and defendant’s evidence of the testing conducted indicates a substantial time was needed therefor, as does the noted testimony of the said Assistant Attorney-General that the subject investigation continued up to the time the boat was returned. We thus find claimant has not shown any basis on which the court could determine the length of time, if any, that the State kept the boat longer than it had a right to. Hence, there is no way to compute the period of compensable loss of use while the boat was in State custody, or even that there was any such period.
As to the propriety of loss of use damages after return of the boat, it is observed that the boat was returned just before the winter months, at a time when claimant did not use the boat as such, but either stored it and/or had parties on it. Conceivably, the repairs necessary to make the boat usable as a boat could have been completed during the period of its nonuse during the winter of 1975-1976. Clearly, claimant had the duty to mitigate his damages (see, generally, 13 NY Jur, Damages, § 37, p 470; 9 Encyc NY Law, Damages, § 121) and that meant completing said necessary repairs within a reasonable period of time. Claimant made no showing what said reasonable period was and the fact he is allegedly still unable to use his boat because of his failure to complete repairs was not shown to be evidence of such period since it was evident the repairs he made were sporadic and at his convenience (it was also not shown that the repairs he has made were all said necessary ones). Hence, as with the supposed loss of use damages prior to its return, claimant has provided no proper evidence of the time period for those damages after its return.
*1100 Finally and most conclusively, with respect to the amount of such supposed damages, claimant presented no proof of the rental values of his boat or a comparable substitute, or of the monetary damages he sustained from the alleged loss of use. (See Schanbarger v Dott’s Garage, 72 AD2d 882, 883; 10 Encyc NY Law, Damages, § 876.) On such a record, it would be impermissible speculation to make any award for loss of use. (See 2 Encyc NY Law, Automobiles and other Motor Vehicles, § 1024, p 184, n 34; 10 Encyc NY Law, Damages, § 876, p 401, n 51; 13 NY Jur, Damages, § 105, p 579, n 16.) We thus conclude claimant has not properly shown any compensable loss of “usable value.” (See 2 Encyc NY Law, Automobiles and other Motor Vehicles, § 1024, p 184.)[9]
Lastly, we have not allowed as damages the annual expenses claimant paid for insurance, summer berthing, winter storage, dues and winterizing. As found with respect to the loss of use damages, claimant failed to present any evidentially adequate basis on which to compute the compensable time period for those expenses, either before or after the return of the boat.[10]
Accordingly, claimant Cono J. Terranova is entitled to an award in the amount of $9,250, with interest thereon from November 14, 1975 to the date hereof and thereafter (see CPLR 5001, subds [a], [c]). Defendant’s motions to dismiss made at the close of claimant’s case and at the trial’s conclusion, upon which decision was reserved, are hereby denied.

. We observe that defendant put into evidence a July 2,1975 search warrant for the boat, but, apparently because of claimant’s consent, the warrant was not executed.

. The cases applying the presumption have involved only motor vehicles (see Vehicle and Traffic Law, § 125) and it has been used principally against defendants in negligence cases who attempted to avoid liability by disclaiming ownership despite being registered owners of the vehicles involved. (See 8 NY Jur 2d, Automobiles and Other Vehicles, § 750; 3 Encyc NY Law, Automobiles and other Motor Vehicles, § 1982, p 252; 27 ALR2d 167, § 3; see, also, Vehicle and Traffic Law, § 388.)

. Even if some or all of claimant’s seized property had constituted or contained such evidence, that property would still have been subject to return to claimant upon termination of the appropriate criminal proceedings. (See People v Di Lorenzo, 72 Misc 2d 51; see, also, 79 CJS, Searches and Seizures, § 114.)

. We note an analogous implied-in-fact bailment arose from defendant’s custody under claimant’s consent up to July 10,1975. (See 9 NY Jur 2d, Bailments and Chattel Leases, § 28.) However, it appears all the compensable damage arose in the course of the implied-in-law bailment (i.e., while claimant’s property was held under the July 10, 1975 warrant) and, even if some damage arose during said implied-in-fact bailment, defendant’s duties and liability thereunder would seemingly be the same as under the implied-in-law bailment.

. As indicated, claimant’s damages arose from either State negligence or intentional misconduct (see p 1095, supra). If defendant believed they arose from something else, something for which it would not be liable (such as unauthorized acts of its employees — see, e.g., Cornell v State of New York, 60 AD2d 714, affd 46 NY2d 1032), it was its obligation to indicate that. It did not do so and hence we have found it liable. We also note that the State negligence on which liability has been premised has been measured by the standard of reasonable care under the circumstances to guard against foreseeable consequences (see, e.g., Basso v Miller, 40 NY2d 233, 241). Arguably a stricter standard was applicable since the search and seizure were obviously not for claimant’s benefit, but solely for defendant’s. That made the subject bailment for the sole benefit of the bailee and the standard applicable to that type of bailment is extraordinary care, with slight negligence being the basis for liability. (See 9 NY Jur 2d, Bailments and Chattel Leases, § 88.) However, due to defendant’s failure to present probative evidence adequately rebutting said inference of negligence, we need make no determination as to the applicability of this stricter standard since said failure sufficiently supports a finding that defendant did not exercise even ordinary or reasonable care and was thus guilty of ordinary negligence (cf., id., § 89).

. Also, said $16,000 did not include his own labor on many of those improvements.

. He also testified to a repair cost of $2,000 (including $600 for spring maintenance), but it was clear his estimate did not include many significant items of damage, such as the cost of a new engine (claimant estimated the cost of this item at $2,675 — see above).

. A minor exception to this is the $250 cost of towing the boat from State custody at Hewlett Bay to claimant’s marina in New Rochelle. Since part of the damage to the boat for which the State was responsible was the inoperability of its engine, we find it proper to award said cost as a necessary incident of that damage. (See 13 NY Jur, Damages, § 95, p 563.)

. Arguably, the award of interest herein compensates claimant for any compensable loss of use. (Cf. 10 Encyc NY Law, Damages, § 916, p 445.)

. We also note we are unable to make any award for allegedly lost, damaged, or destroyed food and clothing because there was no evidence of the value thereof (claimant even testified he did not know or recall their original cost).