OPINION OF THE COURT
Donald J. Corbett, Jr., J.
*157 On June 17, 1988, at about 9:15 p.m., officers of the New York State Police entered claimant’s home for the purpose of executing a search warrant. Claimant alleges that she has been injured as the result of malicious prosecution, abuse of process, trespass and negligence, all of which caused monetary damages for humiliation, mental suffering, loss of income, personal and real property damage, damage to reputation and a decrease in the value of the real property which was the subject of the search.
During the late spring of 1988, New York State Trooper Moesch, who was assigned to the road patrol, was approached by one Curtis Wilson, a resident of the Trooper’s home town of Plattsburg, New York, on some three to four occasions over a three-week period. Wilson claimed that he knew the location of real property where drugs were being used and sold. Wilson further told the Trooper that he had been present at the house; that he had seen a large quantity of marihuana, some cocaine and LSD; that he had personally used drugs at the house and identified the dealer as one "Tom,” who also allegedly possessed numerous weapons, including an Uzi, on the premises. He identified the subject location as a log cabin in Naples, New York, and gave the Trooper the address of 7407 Reservoir Road.
After the second meeting with Wilson, Trooper Moesch contacted the narcotics branch of the New York State Police, and Investigator Fuller was assigned to commence an investigation. After further interrogation, Curtis Wilson was brought before Ontario County Court Judge George A. Reed. Wilson was sworn, questioned as a confidential informant on the record under oath, and proceeded to describe the log cabin on Reservoir Road and the surrounding features of the real property. In great detail, he described the log cabin, its living room, three types of illegal drugs, telephone calls, money, etc. He answered all of Judge Reed’s questions, and a review of his testimony in exhibit A is most persuasive. As a result thereof, a search warrant for the home on Reservoir Road was granted on June 17, 1988, by Judge Reed.
With additional support from other members of the New York State Police, the search warrant was executed. None of the contraband set forth in the search warrant was found, except for two grams of marihuana, for which claimant was charged with a violation. The Troopers determined that Wilson, the confidential informant, had lied to them and to the court. The very next day Trooper Moesch saw Wilson and arrested *158 him for perjury. He was subsequently tried and convicted of perjury and sentenced to State prison.[1]
The owner of the real property, the claimant herein, had lived on Reservoir Road, an isolated rural location, for 10 years prior to the execution of the search warrant. At the time, she was employed as a groom at the Finger Lakes Race Track in Canandaigua, New York, where her earnings amounted to $225 a week. Some eight days before the execution of this warrant, claimant had listed her home for sale, with an asking price of $68,000.
On the 17th day of June 1988, claimant went to bed as usual at 8:30 p.m. At 9:15 p.m. the barking of her dog woke her up. She looked out her kitchen window, saw many cars randomly parked in her yard and driveway, and saw men dressed as police officers carrying guns. She returned to her bedroom to put on a bathrobe and then proceeded to the living room. As she entered the living room, she heard the words "State Police.” As soon as she started to open the lock on her front door, it burst open and the State Police entered. The search commenced, but all that was found was a small amount of marihuana, which claimant alleged belonged to an old boyfriend. Neither the large quantity of marijhuana and cocaine, nor any guns were located. Indeed, they were never there and for some still unknown reason, the confidential informant Wilson had fabricated the entire story.
In the execution of the search warrant, claimant’s front door handle was pulled off; the back storm door window was broken with a pointed shovel; and both the front and rear doors were damaged and unable to be used. The doors were damaged to such an extent that after the doors had been temporarily secured, the claimant had to enter and exit her home by a window. She contends that her lawn was torn up, an interior closet door was damaged, and that she suffered mental distress and humiliation.
State Police Investigator Wentworth testified that during the execution of a search warrant it is necessary, from time to time, to forcibly enter a structure and that damage may be done to the premises. In addition, claimant allegedly was told that the property damage would be "paid for and fixed in a timely manor [sic]”. (Exhibit E.)
*159 Thereafter, claimant told her employer at Finger Lakes Race Track what had happened, and two weeks later she was terminated without any reason being given.[2] She remained unemployed for three weeks. She paid a handyman $308.84 to repair the damage to the doors and window, which repairs were completed by the end of August 1988, some six weeks later. I find claimant wholly credible concerning the property damage item. There was no offer after the execution of the search warrant by any member of the New York State Police, nor by any other State or public official, to assist the claimant in obtaining compensation for this damage.
Claimant alleges that, as a result of this damage done to her property by the State Police, acting under the color of a search warrant, she was unable to continue to list her house for sale, and was thus forced to wait until March of the next calendar year to put it on the market again. She did so, and the house sold one year later, in May 1989, for $60,000. She alleges direct damages in the amount of $8,000 for the loss in the value of the property due to the delay, additional expenses for insurance, heat and electric until the time of the sale, and mental distress.
There is no question that the claimant was the innocent party involved in this proceeding, and it is without dispute that the members of the New York State Police were totally misled by the confidential informant. It is also without dispute that claimant sustained monetary damages as a result of this entire episode, at the very least, in costs to repair the home, as well as damage to the lawn.
Nonetheless, I cannot and do not credit the testimony concerning the loss in the value of the real property in the amount of $8,000, purportedly due to the inability to continue to list the property for sale during the remainder of 1988. Real estate market conditions change, and claimant was certainly able to continue the property listing as of September 1, 1988, and some $300 in damage to the doors was not a sufficient reason to wait until the following year to list the property. Such a claim for diminution of the value of the real property is vague and speculative. The losses claimed for the carrying charges for heat, electric and insurance are similarly not compensable.
As noted above, claimant originally predicated liability upon causes of action sounding in malicious prosecution, abuse of *160 process, trespass and negligence. I will address each putative cause of action seriatim.
With respect to malicious prosecution, the elements of that intentional tort are: (1) the initiation or continuation of a criminal proceeding by the defendant; (2) termination of the criminal proceeding in favor of claimant; (3) the absence or lack of probable cause for the proceeding, and (4) actual malice (Broughton v State of New York, 37 NY2d 451, cert denied sub nom. Schanbarger v Kellogg, 423 US 929). Claimant withdrew this cause of action prior to trial, and, in any event, there was no documentary proof before the court of the second element, the termination of the criminal proceeding. Regardless, the cause of action sounding in malicious prosecution is dismissed, as are any claims for attorney’s fees, etc. (also see, Court of Claims Act § 27).
As to abuse of process, the elements thereof are articulated in Board of Educ. v Farmingdale (38 NY2d 397, 403), to wit: (1) regularly issued process, civil or criminal, compelling the performance or forbearance of some prescribed act; (2) the person activating the process must be moved by a purpose to do harm without economic or social excuse or justification;[3] (3) the defendant must be seeking collateral advantage or corresponding detriment to the claimant which is outside the legitimate ends of the process, and (4) actual or special damages. While some evidence of first and fourth elements was presented at trial, the evidence before me did not encompass or address any proof whatsoever of the second or third requisite elements of abuse of process. In any event, as it appears that this cause of action has been abandoned, it is dismissed for the failure of proof.
With respect to allegations of negligence, claimant urges that the State Troopers herein negligently investigated this matter leading up to the issuance of the search warrant, as well as negligently executing the warrant. The thrust of the argument relating to a purported negligent investigation prior to the issuance of the warrant, questions the corroboration of the information supplied by the confidential informant, and/or an. investigation of the informant’s prior criminal and jail record, if any. Additionally, it is urged that the defendant was negligent in failing to ascertain ownership of the house in question. Claimant asserts that these are examples of ministe *161 rial neglect, within the penumbra of Boland v State of New York (161 Misc 2d 1019, affd 218 AD2d 235 [where, in addition to the finding of a special relationship, the Court affirmed a finding of negligence in the performance of a ministerial duty, specifically that a child protective specialist erroneously reported allegations of child abuse / maltreatment to the Child Protective Unit of the wrong county]).
I find that the proof here is inadequate to show either the existence of ministerial duties on the part of the defendant or negligence in their performance, had any been established. Generally speaking, a search warrant may be issued based upon information supplied by a confidential informant provided that (1) there are sufficient indicia of the reliability of the information, and (2) the informer has a basis of knowledge for the statement. Put another way, there must be a showing that the information itself is reliable and that the informant is credible.
It is abundantly clear here that the defendant met its duty in both respects, and that claimant has failed to demonstrate that there existed a duty, either prior to the issuance of the warrant or thereafter until its execution, to investigate the particular questions raised by claimant. Probable cause for the issuance of the search warrant existed here, because: (1) the informant established his reliability by making a declaration against his penal interest under oath in front of Judge Reed on the record (see, People v Taylor, 73 NY2d 683, 688; CPL 690.40 [1]), and (2) the information provided to the Troopers and to Judge Reed was so explicit, extensive and detailed as to support the inference that it was based upon the informant’s personal knowledge (see, People v Rodriguez, 52 NY2d 483, 493; People v Elwell, 50 NY2d 231, 240, and particularly the transcript of the informant’s testimony recited in exhibit A).
Thus, I find that there was probable cause for the issuance of the search warrant. Claimant has failed to show that there was any duty to go further,[4] and, in the absence of such duty there can be no breach, and thus no liability. Furthermore, because of the nature of the purported contraband, easily disposable drugs, coupled with the "reliable” report of an Uzi on the premises, the propriety of the issuance of a no-knock warrant is unquestioned.
*162 The only remaining question with respect to alleged negligence then is a review of the manner of execution of the warrant. There was no evidence before me that the agents of the defendant, in the execution of the "no-knock” warrant, engaged in wanton or egregio us conduct. The handle of the front door was pulled off and the door was torn off its hinges. A storm door window on the basement door was broken with a pointed shovel, and the door was otherwise dented, as the Troopers entered the premises from the locked front and rear doors. A folding door to an interior closet was damaged, and no longer opened and closed properly. Several motor vehicles utilized by the Troopers drove upon and damaged the lawn on claimant’s property. None of the above demonstrates in any persuasive manner that the Troopers overstepped the bounds of the warrant or engaged in excessive conduct in entering upon claimant’s property and in forcibly entering the premises from the front and rear (basement) doors. The question of whether the execution of the warrant was accomplished with unnecessary force or severity is one for the trier of fact (Siemiasz v Landau, 224 App Div 284 [4th Dept 1928]). There is no evidence here that the Troopers went so far as to destroy property that was not reasonably necessary to effectuate the search warrant and potentially violate the Fourth Amendment (Richardson v Henderson, 651 So 2d 501, 504 [La App]), nor did they fail to give due respect to the property and carry out the search warrant in an unprofessional, unreasonable or excessive manner (at 505). No cause of action sounding in negligence has been proven, and it is dismissed.
Lastly, the claimant argues that a trespass occurred. Indeed, there was an intent by the defendant to enter upon claimant’s property; there was an entry by the Troopers onto said property, and the claimant was in possession of said property (PJI 3:8 [1995 Supp]). It has generally been held that entry pursuant to a facially valid court order is not actionable in trespass (Iovinella v Sheriff of Schenectady County, 67 AD2d 1037, lv denied 47 NY2d 707, mot to dismiss appeal granted 47 NY2d 799). But the Court of Claims has not been reluctant to examine the conduct of the police authorities in the effectuation of a search warrant, as the Hon. Frank S. Rossetti did in deciding a legal question of first impression, to wit, whether the State can be held liable for damages attending a legally authorized search, but which is unreasonably conducted (Matter of Terranova v State of New York, 111 Misc 2d 1089, 1094).
Judge Rossetti found no New York case on point in Terranova (supra), but noted that the State was not immune from *163 any damage caused by the warrant, albeit finding liability for damages because of the State’s conduct as the bailee of seized property, to wit, conduct beyond the scope of the warrant (at 1095-1096).
I, too, am faced with a similar situation, without case precedent squarely on point to guide me. Inferentially, I could draw the parallel to false arrest claims where probable cause for the arrest insulates the defendant from liability. But at least in that area, the judicial review is legion. Here, as to damages sustained in the execution of a no-knock warrant,[5] there is a curious, yet revealing, void of judicial precedent.[6] Claimant testified that she was told at an interview with State Troopers herein that she should forward her bills, although there seems to be confusion as to the intended recipient. Should they have gone to the State Police, who executed the warrant, or to Ontario County, as it was an Ontario County Judge who issued the warrant? The unspoken undertow in this case is a common-law understanding that since claimant was the totally innocent victim of perjurious and false accusations (with no apparent chance of recovery against the perjurer and apparently unadvised of the right to seek restitution), that there would be recompense for the actual damages to her home. The inference is overwhelming that these matters are informally resolved, and do not result in litigation beyond the formality of filing a notice of claim or a claim, unless they are tangential to ancillary State or Federal court actions.
Thus, claimant seeks consequential actual damages to her property arising from a legally authorized trespass by the State Police. I find that the facts of this claim present a compelling case for a common-law remedy resulting in an award of de minimis compensatory damages. It has often been said that in our constitutional form of government, with its due process guarantees, it is better to let 100 guilty people go free than to wrongly imprison 1 innocent person. When those principles are faithfully respected, justice is done because these protections serve all of us. Here, the State Police, through no fault of its own, damaged claimant’s premises when executing a war *164 rant. Claimant, through no fault of her own, suffered a loss, for which I find the defendant should make her whole.
Claimant credibly established through testimony that she expended some $308.84 to repair and/or replace her front and rear doors, and that an interior closet door and her lawn sustained damages of some $250 in addition. Accordingly, based upon my review of the entire record herein, I find that claimant has been damaged in the sum of $558.84, with appropriate interest .from June 17, 1988 (see, 104 NY Jur 2d, Trespass, § 43, at 492) until December 17, 1988, and then from June 14, 1990 (Court of Claims Act § 19 [1]).
All motions made at trial and not heretofore ruled upon are now denied.

. No other evidence was presented with respect to the sentence imposed upon Wilson, in particular, whether restitution for claimant was ever sought or ordered by the court. Since it is not in the record before me, I conclude that it was not raised.

. No evidence was presented, beyond claimant’s speculative inference, that the termination was causally connected to the incident in question.

. One might infer that such purpose could be attributable to the actions of the confidential informant Wilson, but the record is totally barren of any such inferable motive by the defendant or any of the State Troopers involved.

. "In addition, New York does not recognize an action alleging negligent investigation or prosecution of a crime, as the police are not required to follow every lead that may yield evidence beneficial to the accused” (Hernandez v State of New York, 228 AD2d 902, 904 [citations omitted]).

. For purposes of clarity in any appellate review herein, I reject any claim for consequential damages for mental distress (see, e.g., Herman v State of New York, 78 Misc 2d 1025; Allinger v City of Utica, 226 AD2d 1118).

. That seems to be the case, as compelling claims are settled before court intervention, albeit where there is an innocent victim and at least arguable error by the police entity.