## In re MONTELLO SALT CO.
## CHEZ, Atty. Gen., v. EVANS.

No. 5649.   Decided January 31, 1936.   (53 P. [2d] 727.)

284

*Joseph Chez*, Atty. Gen., and *Zelph S. Calder*, Deputy Atty. Gen., for appellant.

*J. E. Evans*, of Ogden, for respondent.

MOFFAT, Justice.

A brief history of the matter here for consideration is essential. The case arises out of a petition filed by the respondent county treasurer of Weber county, Utah, seeking to have certain funds, of which he was custodian under an order of the court, distributed to the known former stockholders of a dissolved private corporation, such funds being unclaimed funds ordered to be distributed to persons named as stockholders of the dissolved corporation, but who had not appeared to receive or claim the said funds.

It appears that on and for some time prior to July 31, 1922, the Montello Salt Company was a duly organized corporation under the laws of the state of Utah. On that date a petition was filed, the purpose of which was a voluntary dissolution of the corporation and winding up of its affairs. Proof of publication of notice of dissolution was duly made. On September 7, 1922, objections to the application for dissolution were filed. After proceedings regularly pursued for determination of the issues made, findings of fact and conclusions of law were made and on March 8, 1923, the Montello Salt Company was by decree of the court declared dissolved.

The decree appointed a receiver and required the officers of the dissolved corporation to deliver to the receiver all property and assets, books, papers, and records of the corporation, and directed the receiver to proceed to wind up the affairs of the corporation and distribute the assets to the stockholders. The receiver duly qualified and fully reported to the court the proceedings taken and distribution made. The second and final report and account of the receiver was on February 4, 1925, allowed and confirmed; the receiver was discharged and directed to pay to the clerk

of the court and balance of cash on hand, amounting to $18,718.33. The clerk was by the same order directed to deposit the fund with the county treasurer. Said fund was to draw interest and be held "in trust for the benefit of stockholders * * * of said the Montello Salt Company who have not received the dividends to which they are entitled." The receiver's report showed about 400 out of a total of about 1700 stockholders who had not received the distribution of the assets to which they were entitled.

After the funds were placed with the county treasurer, he reported twice to the court showing the state of the funds. As a part of the second report, the treasurer petitioned the court for an order to direct him to pay the funds held by him to the stockholders (and "pooling receipt holders" which for the purpose of this opinion are the same) "who have come in and surrendered their certificates and receipts, and that all those stockholders and pooling receipt holders appearing on the records of the said company who have not come in and surrendered their certificates and receipts should be barred from participating in the distribution of the assets of said company." The petition and report showed a balance on hand at that time of $23,779.98, which sum the petition sought to distribute to known participants in the distributions formerly made.

When the proceeding had reached this status, the Attorney General of the state of Utah filed a petition by which the claim was made that the assets of the dissolved corporation held by the court and in the custody of the county treasurer were subject to escheat pursuant to article 10, section 3, of the State Constitution as "unclaimed shares" of stock "and dividends" of the Montello Salt Company. The court made findings of fact, historical in character, and concluded that the state of Utah was not entitled to have the sum of $23,779.98, or any part thereof, forfeited as unclaimed shares or dividends of a corporation, and entered judgment against the state or Attorney General accordingly, and further ordered and decreed that the coun-

ty treasurer, as custodian of the funds, pay an attorney's fee and certain expenses and compensation to himself and directed that the "moneys then remaining in his hands" should be paid "ratably to all stockholders or pooling receipt holders of said the Montello Salt Company who have surrendered their stock certificates or pooling receipts on or before December 31, 1934." The last part of this order would seem to include stockholders who have already been paid and also to exclude all stockholders who failed to surrender their certificates or receipts by the date fixed.

We are of the opinion the judgment entered by the court was erroneous. When the corporation was dissolved, its debts and obligations determined, liquidated, and paid, and the surplus put into the form of cash assets, such assets became and were the property of all the former stockholders, to be distributed to them in proportion to the share as found and decreed by the court to be the the share and quantity each former stockholder was entitled to. This property then became vested in the former stockholders and was no longer shares of stock and was not dividends on stock earnings. It was assets distributed in trust for those who should show themselves to be entitled thereto. The fund here in controversy does not seem to fall within any of the classifications of property subject to escheat or forfeiture.

In the case of *In re Apostolopoulos' Estate,* 68 Utah, 344, 250 P. 469, 253 P. 1117, 48 A. L. R. 1322, statutes relating to the subject of escheats and forfeiture are roughly divided into three classes. They are: (1) Those that provide for the disposition of decedents' estates who die without heirs. (2) Those that provide for the disposition of bank deposits or other property where the owners have departed from the place where the property is located or deposits were made, and the whereabouts of such owners is unknown and it is not known or cannot be ascertained whether they are living or dead. (3) Those where the death of the owner is known and his death has been judicially established

and the estate has in due course been administered upon, but no claimant has appeared to claim succession within the period fixed by the statute.

Clearly, in the instant case the fund sought to be subjected to forfeiture does not fall within any of the three classes defined. So far as the record discloses, none of the fund nor any interest in the fund has yet become part of a decedent's estate. It is not a bank deposit. It does appear that the parties are known. It does not appear whether they are living or dead, or, if dead, whether they left the state or not. In view of the presumption that one lives until it is otherwise shown, the only legal factor of uncertainty about the parties entitled to this fund is their whereabouts. That this fund or some part of it may ultimately be forfeited or escheat to the state may be, but there does not seem to be either law or procedure now provided to justify the state in laying claim to the fund to the exclusion of those to whom it was awarded and placed in trust, or their heirs or assigns.

The Attorney General argues that article 10, section 3, of the Constitution requires this fund to be turned over to the state treasurer for the benefit of the state school fund upon the ground that the fund comes within the contemplation of "unclaimed shares and dividends of any corporation incorporated under the laws of this State." We are of the opinion the fund is neither a share nor a dividend of a corporation in the sense used in that section of the Constitution, but the Legislature may nevertheless provide that such a fund in due time and when proper procedure has been initiated and carried to a conclusion may be forfeited to the state school fund. The corporation was dissolved simultaneously with the appointment of a receiver. The receivership has been terminated, the receiver discharged, and the fund is now in custodia legis in trust for the owners of the fund.

"Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect, and no ancil-

lary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed." 12 C. J. 729, § 106
"A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." Cooley's Const. Lim. (8th Ed.) p. 167.

The provision that, "all unclaimed shares [of stock ?] and dividends [on shares of stock ?] of any corporation incorporated under the laws of this state * * * shall be and remain a perpetual fund, to be called the State school fund," in our opinion, whether limited by the questioned bracketed suggestions or not, is not a self-executing provision within the rule above expressed.

That it is within the power of the Legislature to determine what and when unclaimed shares of stock or dividends of corporations may be forfeited or escheat may not be doubted from the authority of the provision of the Constitution above quoted or without it, and to determine whether such a fund as is here in litigation or any part of it will escheat, or become forfeited, and to fix the time within which it must be claimed, and otherwise to provide when and the procedure by which it should become forfeited or an escheat under the sovereign power. It is equally as certain that the Legislature has not fixed a time, indicated the conditions, nor suggested any rules for determination, nor provided a procedure applicable to such a fund as is here sought to be recovered. Until the Legislature acts or until the fund progresses to a point where it may be subjected to the procedure relating to escheat of decedents' estates, or subjected to forfeiture, we find no authority to require it to be taken out of the custody of the court.

Section 87-6-1(14), R. S. Utah 1933, provides, among other things, relating chiefly to the duties of the Attorney General, that "when any real or personal property is discovered which should escheat to the state, the attorney-

general must institute suit in the district court of the county where such property is situated for its recovery, and to escheat the same to the state." That the Attorney General has discovered some property seems to be true. Whether or not the property discovered "should escheat to the state" or become forfeited is the real matter to be determined. That the "property discovered" may ultimately arrive at such legal status as to work an escheat or forfeiture is not now before us, it being certain that such a status has not yet been attained.

While the fund has been referred to in a lump sum, the fact is, as shown by the record, that it has been divided and distributed to individuals and specifically █ labeled as to owner and amount thereof. We fail to discover any reason why any person other than the one to whom the fund has been distributed or his heirs or assigns, under the present status of the case, should be concerned about the matter.

It is therefore ordered that the judgment providing that the state of Utah is not entitled to have the fund, or any part of it, set aside and paid to the state treasurer for the state school fund as unclaimed shares and dividends of a corporation or as escheat moneys, and that the Attorney General take nothing by reason of his petition for escheat claim, be affirmed, and that that part of the judgment as shown in paragraph 2, ordering a distribution and division of the fund otherwise or different from the judgment of distribution entered at the time and upon the approval of the final account of the receiver, be vacated and set aside. The fund is in the custody of the court, in trust for the respective lawful owners thereof.

In view of the result reached, no costs in this court should be awarded to either party. The cause is accordingly remanded to the trial court.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, J., concur.

WOLFE, Justice (concurring in part, dissenting in part).

I concur in the results reached in the prevailing opinion to the effect that the clause contained in section 3, article 10, of the Constitution reading, "all unclaimed shares and dividends of any corporation incorporated under the laws of this State," is not self-executing. The reason it cannot be self-executing is that there is no time fixed by which it can be ascertained when a share or dividend is unclaimed. Certainly, if it were unclaimed for a week or a month, it could not revert to the state. I do not think it should be left to the court to say when a share was unclaimed, for, if so, it would vary according to the court which tried the issue. The Legislature must provide some time during which the share is unclaimed and perhaps machinery which will comply with the requirements of due process, designed to inform the person entitled to the share that it was waiting for him to reduce it to possession before forfeiture proceedings may be effective.

I therefore concur in the results to the effect that the lower court could not decree these so-called unclaimed shares in the Montello Salt Company to the school fund. I further agree with the result reached in the prevailing opinion that the unclaimed shares could not be turned over to those former stockholders of the Montello Salt Company who had claimed their shares.

In my opinion section 3 of article 10 of the Constitution dealt with various methods by which school funds should be augmented. One was by "the proceeds of all property that may accrue to the State by escheat or forfeiture" and another was "all unclaimed shares and dividends of any corporation incorporated under the laws of this State." The latter is not an escheat. Escheat and forfeiture, to my mind, as used in section 3 are technical and have the meaning and content as the same were known in the common law. Escheat in the common law arose where the line of descent failed. It reverted to the original lord or grantor. Since the

original lord under the feudal system was the king, it reverted to him.

"In this country, however, the state steps in, in the place of the feudal lord, by virtue of its sovereignty, as the original and ultimate proprietor of all the lands within its jurisdiction; 4 Kent 424. See [*Matthews* v. *Ward's Lessee*], 10 Gill & J. [443], 450; 3 Dane, Abr. 140. And it escheats to the state as part of its common ownership, either by mere operation of law, or upon an inquest of office according to the law of the particular state; [*Hamilton* v. *Brown*], 161 U. S. 256 [16 S. Ct. 585, 40 L. Ed. 691]; 3 Washb. R. P. (4th Ed.) 47, 48. It is, perhaps, questionable how far this incident exists at common law in the United States generally." *Bouvier's Law Dict.* 1934 (Baldwin's Cent. Ed.) 362.

Forfeiture also had a special meaning. To escheats and forfeitures, as known in the technical sense, the state added unclaimed shares and dividends in domestic corporations. To my mind, it is a mistake to call these unclaimed shares and dividends escheats, except in the popular use of the word escheat. Consequently it follows that unless we have some statute which provides for the time in which an unclaimed share reverts to the state, no judgment decreeing such unclaimed shares as part of the school fund would be valid.

I cannot agree with the prevailing opinion to the effect that after a corporation is dissolved and its assets are held by the court for the purpose of distribution to the proper parties, each former stockholder's share is not a share in the corporation as meant by section 3, article 10, of the Constitution. The phrase meant something more than a share of stock. A stock certificate is, among other things, the indicia of an owner's aliquot part upon liquidation of a stockholder's share in the corporation. When the corporation is dissolved and its assets held by trustees or in custody of the law for the purpose of distributing to those who are entitled to the corporation's property upon liquidation, each of such person's share in such fund is still in contemplation of the clause in section 3 of article 10 a share in the corpora-

tion. What is meant by that clause is an unclaimed share in the assets of the corporation, or the assets which were the corporation's.

In my opinion, therefore, the statement contained in the prevailing opinion that, "We are of the opinion the fund is neither a share nor a dividend of a corporation in the sense used in that section of the Constitution," is incorrect. I think it is such share, but I think that the Attorney General cannot reach it because machinery has not been provided whereby the courts may say when it is or when it is not an unclaimed share, as meant by the words of that clause. I also concur in the opinion of Mr. Justice FOLLAND regarding the nature of what our judgment should be.

FOLLAND, Justice (concurring in part, dissenting in part).

I concur in a reversal of the judgment. The provision of the Constitution, "all unclaimed shares and dividends of any corporation incorporated under the laws of this State," should not be limited in its construction to mean only unclaimed shares of stock and dividends on shares of stock. It is not only not necessary so to do in this case, but I believe the language susceptible of a meaning broader than indicated in the opinion.

The judgment should be reversed in whole and not in part. If that portion of the judgment adverse to the contention of the Attorney General is sustained in its present wording, it may be the source of difficulty or embarrassment when in the future proper steps are taken by the Attorney General to have these funds transferred to the state treasury. I cannot concur in sustaining that part of the judgment which reads, "that the State of Utah was not entitled to have the sum of $23,779.98, or any part thereof" paid to the treasurer of the state of Utah, in favor of the state school fund, as unclaimed shares or dividends of a corporation, or as escheated moneys or otherwise or at all.

The order should be that the judgment be reversed and the cause remanded to the district court of Weber county with directions to dismiss both petitions.