340 P.2d 88

**L. W. ARMWOOD** and Mary K. Armwood, Plaintiffs and Appellants,

v.

William A. FRANCIS, d/b/a Uncle Bill's Dinner Bell Motel and Cafe, Defendant and Respondent.

No. 9002.

Supreme Court of Utah.

June 8, 1959.

Concurring Opinion June 12, 1959.

D. H. Oliver, Salt Lake City, for appellant.

Moreton, Christensen & Christensen, E. R. Christensen, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a judgment dismissing plaintiffs' complaint. Affirmed, with costs to respondent.

This case was decided upon the pleadings and upon answers to interrogatories under the rules relating to discovery,[1] when a motion to dismiss was granted after a pre-trial hearing. At the pre-trial, an order was entered, conceded to be accurate by counsel for both sides, as to the admitted facts stated therein and as to the respective contentions of the litigants. The order set out generally the contentions of the parties, plaintiffs' being that a meal was sought at defendant's cafe, where plaintiffs were denied service in violation of Title 76–31–2, Utah Code Annotated 1953,[2] and defendant's being that plaintiffs came to the cafe, but not to his motel or any other part of his property that could be classified as an inn under the statute, defendant denying that he refused the service mentioned or that he requested them to leave, countering that he invited them to stay and eat gratis.

The remaining portion of the pre-trial order set out what the parties conceded were undenied evidence, which stated:

"The uncontroverted facts in the case are: that the plaintiffs, on the 1st day of September, 1957, went to defendant's place of business at about 861 No. Second West, and served themselves to certain food items at which is called the Smorgasboard, and then seated themselves at a table; the plaintiffs were colored people; later the police arrived, and after the police arrived, the defendant offered to serve the plaintiffs a meal at the defendant's expense. The plaintiffs did not make any request for lodging."

Plaintiffs urge three points on appeal: 1) that an inn is a place where travelers or sojourners are provided with the accommodation of lodging, food and drink, 2) that plaintiffs became defendant's guests, and 3) that whether or not defendant's cafe was a part of his motel business was a question of fact for the jury.

We do not disagree with point 1) since it is but a definition of the word "inn."

1. Rule 33, Utah Rules of Civil Procedure.
2. "Every person and every agent or officer of any corporation carrying on business as an innkeeper who refuses, without just cause or excuse, to receive and entertain any guest is guilty of a misdemeanor."

As to point 2), it appears obvious that the word "guest" is used as it might relate to innkeepers, which we will discuss later. As to point 3), that whether the cafe was a part of the motel was a question of fact for the jury, apparently the matter was left to the trial court, on defendant's motion to dismiss, the plaintiffs having invited the trial court to determine the matter by motion for summary judgment [3] "determining liability of the defendant" and the defendant likewise having made such an invitation by motion to dismiss "because the complaint and pleadings and pre-trial order fail to state a claim," there being no other request or demand for further proceedings shown in the record, plaintiffs merely appealing from the judgment dismissing the complaint.

Up to the time these motions were interposed, both parties had employed the discovery procedure and the motions were based on the pleadings and the facts adduced by such discovery procedure. Defendants asked 21 questions of plaintiffs, and they asked 4 of him, with the following results:

Of the 21 interrogatories put to plaintiffs, 7 were answered, which pointed up the facts that they had gone to the cafe, entered what they described as "main entrance of office and cafe," spoke to defendant's employees when they were at the smorgasbord table to make a selection of salad and meat; that they selected the salad, and ate the food but "did not complete the salad"; that they did not return to the cafe, but waited in their car "until the police officer arrived."

Plaintiffs wholly failed to answer interrogatories put to them calling for information as to who was present and what was said; whether anyone prevented them from obtaining food; where they went and what they did after obtaining food; whether they ate the food; who the person was whom they alleged denied them service; such person's description with respect to sex, age, physical characteristics and dress; where any conversation took place; what the employees were doing; what was actually said; what they did after the alleged conversation; where they went thereafter; and as to whether or not they had been offered a meal by defendant gratis.

On the other hand, defendant answered all of plaintiffs' interrogatories, which answers evidenced the facts that "a license was issued" by the city "for 861 No. 2nd West," and one for the motel; however, that the motel units were separate and apart from 861 No. 2nd West and "had no physical connection therewith" and that "reservations for the motel could be obtained from the cashier at 861 No. 2nd West," which was a restaurant; and that actually no office was maintained there for the motel.

Counsel for plaintiffs, in moving for summary judgment, stated in a supporting affi-

3. Under Rule 56.

davit that he had seen a sign at the motel reading "Motel Office in Cafe, 861 North Second West."

The motion to dismiss that was granted, was based "on the complaint, pleadings and pre-trial order," but the dismissal did not specify whether it was made because 1) there was no innkeeper-guest relationship as contemplated under the statute, or 2) whether there simply was no refusal to serve and therefore no violation of the statute, irrespective of any innkeeper-guest relationship.

■ From an examination of the pre-trial order and the answers to the interrogatories it appears that as a matter of law the defendant did not violate the statute since there appears to be no evidence to the effect that the plaintiffs were refused service. This, although the plaintiffs had ample opportunity to answer pertinent interrogatories calling for the facts with respect to any such refusal. The trial court, therefore, was not in error in granting the motion to dismiss.

■ As to the innkeeper-guest relationship aspect of this case, which we really need not decide, it would appear that about the only evidence pointing at all to any such relationship was the affidavit of counsel with respect to the sign reading "Motel Office in Cafe," which falls far short of establishing any such relationship. Absent any further evidence, the trial court well might have concluded specifically that as a matter of law also, there was no such relationship in this case.

■ Each case involving the existence or non-existence of this relationship must be determined on its own particular facts. Parenthetically, however, we might suggest that the world has come a long way since necessity created the innkeeper-guest relation as known at common law, with its own distinct liability. We think courts may be prone to take a second look at that relationship before applying it to the hostelries of the space age in a case where, for example, a traveler aboard a covered wagon might arrive at a skyscraper hotel, demanding not only food and refreshment, but an attendant to tether, groom and hay his horses, and barn his wagon.

■ We have held that a restaurant in and of itself is not an inn either in the common law or modern sense.[4] Plaintiffs' authorities generally have to do with controversies involving those who have sought, claimed and/or obtained lodging, as was not the case here, and which otherwise are factually different than the instant case. As to the whole relationship, in its modern aspect, we are somewhat impressed by the logic and reasoning of much of the language in Alpaugh v. Wolverton, 1946, 184 Va. 943, 36 S.E.2d 906, cited by defendant,

4. Nance v. Mayflower Tavern, 1944, 106 Utah 517, 150 P.2d 773.

which more nearly approaches the situation we have, and to which language, without repetition here, reference is made for the interested reader.

WADE and McDONOUGH, JJ., and TUCKETT, District Judge, concur.

CROCKETT, Chief Justice (concurring).

I concur in affirming the judgment but am impelled to express my regret that such is the state of our law. The statute relied upon by the plaintiffs proscribing refusal of service applies to an "innkeeper." As indicated in the main opinion, this court held in the Nance v. Mayflower Tavern case that a cafe as such does not fall within the meaning of that statute. The plaintiffs were seeking to patronize the cafe and not the lodging provided by the motel maintained by the defendant. Thus, under our law as it stands, I think the determination is correct.

Proposed "civil rights" bills prohibiting discrimination in public places on the basis of race or color have been introduced in practically every session of our legislature for at least the last 25 years. It is unfortunate from the writer's point of view that no such law has yet been enacted. However, it is reassuring to note that such bills seem to have made substantial progress in gaining support over the years. In the 1959 session just concluded, a moderate bill, carrying only a penalty of actual damages for any aggrieved person, was introduced and passed in the House. A public hearing was held, at which considerable support was voiced, and no one spoke against it. The vote in the House was 51 for, 11 against, 1 absent. But in the Senate it met opposition and was left to die in Sifting Committee without being brought to a vote.

It is unfortunate that such has to be the fate of legislation which only seeks to afford all citizens the ordinary decency of being accepted on a standard of equality in places serving the general public. This appears to be plainly envisioned by the idealistic declarations in the documents upon which the foundations of our government rest, but which realistically it must be admitted are not given full and literal effect in practice. It is reassuring that there are signs of encouragement in recent years. There seems to have been a reawakening and a resurgence of the spirit of liberty in our land manifest in a movement toward a fuller and more practical recognition of the basic natural rights inherent in the often proclaimed ideal that "all men are created equal." This question cannot be escaped: if we continue to prate of this ideal, why don't we move toward its practice in reality and the elimination of second-class citizenship.

152

The origin and history of our state suggest that here of all places one could expect the rights of minorities to be safeguarded. We have ventured some pride in believing that in most areas of our social relationships we manifest a tolerant and humanitarian attitude toward all men. It seems anomalous that we should be among the backward states of the union in adopting civil rights legislation. The couplet of Alexander Pope is appropriate:

"Be not the first by whom the new is tried

"Nor yet the last to cast the old aside."

Notwithstanding the merits of plaintiffs' contention under the general ideals of our system of law and democracy, and the desirability of having their rights and all similarly situated protected, it must be appreciated that the law-making power is in the legislature as the representatives of the people. It has spoken on the subject, selecting "innkeepers" as the only class of business in which discrimination is expressly prohibited. Howsoever desirable any objective may be, I agree that interpretation and application of the law is the extent of the judicial prerogative and that it does not extend to legislation. Under the state of our statute and decisional law, I see no other course than to concur in affirming the judgment.