**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FEB 9 2001**

**TENTH CIRCUIT**

**PATRICK FISHER**
**Clerk**

CARL JENSEN and JUDY JENSEN,
for themselves individually, and on
behalf of their children, C.J., AMJ and
ABJ,

      Plaintiffs-Appellants,

v.

MUFFET REEVES, in her official and
individual capacity; ALPINE
SCHOOL DISTRICT; TOM RABB, in
his official and individual capacity;
ROY PEHRSON, in his official and
individual capacity; and KENT
PIERCE, in his official capacity,

      Defendants-Appellees.

No. 99-4142
(District of Utah)
(D.C. No. 98-CV-208-B)

**ORDER AND JUDGMENT**[*]

Before **MURPHY** and **ANDERSON,** Circuit Judges, and **KANE**,[**] District
Judge.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable John L. Kane, Jr., District Judge, United States District Court
for the District of Colorado, sitting by designation.

After C.J. was suspended from Sharon Elementary School for engaging in several alleged incidents of misconduct, his parents, Carl and Judy Jensen, filed this civil rights action on their own behalf and on behalf of C.J. (collectively the "Plaintiffs") against the following entity and four individuals: Alpine School District; Tom Rabb, Roy Pehrson, and Kent Pierce, employees of Alpine School District; and Muffet Reeves, the principal of Sharon Elementary School (collectively the "Defendants"). The Plaintiffs' civil rights complaint alleged the following seven general causes of action: (1) they were denied procedural due process in violation of the United States and Utah Constitutions when C.J. was suspended from school; (2) the Defendants failed to comply with § 504 of the Rehabilitation Act in dealing with C.J.'s behavioral problems; (3) the Defendants' actions relating to the suspension of C.J. denied them equal protection under both the United States and Utah Constitutions; (4) the Jensens were denied their right as parents "to direct the care and upbringing of their children in fulfillment of their moral, God-given duty to do so" in violation of both the United States and Utah Constitutions; (5) the Defendants infringed C.J.'s interest in his reputation; (6) the Defendants violated their privacy rights under the United States Constitution, the Family Educational Rights and Privacy Act ("FERPA"), and the Utah Constitution; and (7) the Defendants violated their First Amendment right to petition the government for redress of grievances.

In response to the Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss, the district court dismissed the Plaintiffs' complaint in its entirety, resolving both the federal and state claims on the merits. On appeal, the Plaintiffs contend as follows: (1) the district court erred as a matter of law in ruling that their civil rights complaint failed to state a claim under the United States Constitution, Rehabilitation Act, and FERPA; (2) the district court abused its discretion in refusing to dismiss their state-law claims without prejudice after concluding the complaint failed to state a valid federal claim; and (3) even assuming the district court acted within its discretion in reaching the merits of their state-law claims, it erred in dismissing those claims on the ground that the Plaintiffs had not filed a timely notice of claim pursuant to Utah Code Ann. §§ 63-30-11 and 63-30-13. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms** the district court's order of dismissal.

The district court began its analysis of the Defendants' motion to dismiss by correctly noting that it must assume the truth of all well-pleaded facts alleged in the Plaintiffs' complaint, viewing those facts and all reasonable inferences in the light most favorable to the Plaintiffs. *See* Dist. Ct. Memorandum Opinion & Order at 6; *see also Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543 (10th Cir. 1995). Applying that standard, the district court set forth a thorough recital of the relevant facts, drawing those essential facts from the well-pleaded allegations in

the Plaintiffs' original and first amended complaints. *See* Dist. Ct. Memorandum Opinion & Order at 2-6. Because this court's *de novo* review of the Plaintiffs' amended complaint reveals that the district court's rendition of the facts is both thorough and accurate, and because neither party on appeal objects to the district court's statement of the facts, this court need not restate the relevant facts.

The district court began by addressing each of the Plaintiffs' numerous federal claims. As noted by the district court, the Plaintiffs' federal due process claims arise out of the events surroundings C.J.'s ten-day suspension. In particular, the Plaintiffs argue that they were denied due process with regard to the manner in which Reeves investigated and handled the suspension. They further argue that the post-suspension hearing was not in conformity with Alpine School District policy. As to Plaintiffs' claims regarding the processes utilized by Reeves in investigating and handling C.J.'s suspension, the district court concluded those processes afforded C.J. the rudimentary precautions against unfair or mistaken findings of misconduct as required by *Goss v. Lopez*, 419 U.S. 565, 581 (1975). With regard to the post-suspension hearing, the district court noted that the Jensens were given notice of the hearing and an opportunity to attend. When the Jensens were unable to attend the hearing, the administrative panel sent them a tape of the hearing and informed the Jensens that they could respond in writing or set another time to reconvene the panel. These procedures

complied with Alpine School District policy. Finally, the district court concluded that to the extent Carl and Judy Jensen were claiming a violation to their due process rights arising out of the suspension of C.J., those claims failed because procedural due process is due to the student facing suspension, not that student's parents.

As to Plaintiffs' claims arising under the Rehabilitation Act, the district court noted that although the Jensens were provided with all the documents necessary for C.J. to be considered for a special education placement, including permission slips, the Jensens never consented to the placement of C.J. in such a program. Absent such consent, the Defendants were without authority to place C.J. in a program providing special education and related services. Furthermore, the district rejected as inconsistent with controlling regulations the Plaintiffs' assertion that their private evaluation of C.J., which was communicated to C.J.'s classroom teacher and other school officials in the process of dealing with and trying to control C.J.'s behavioral outbursts, constituted consent to special placement. *See* 34 C.F.R. §§ 300.500, 300.504.

The Plaintiffs' amended complaint also alleged that the Defendants denied C.J. equal protection under the United States Constitution when they treated him differently than other similarly situated students. In finding that this allegation failed to state a claim, the district court first noted that neither the Plaintiffs'

original nor amended complaints alleged any facts to support their conclusory allegation that C.J. was treated differently from similarly situated students. Furthermore, the Plaintiffs' equal protection claim is premised on the assumption that C.J. qualified as disabled under the Rehabilitation Act. The district court concluded that because the Plaintiffs' Rehabilitation Act claim failed as set forth above, their equal protection claim failed on the same grounds.

The district court concluded the Jensens' claim that the Defendants had interfered with their right to direct the care and upbringing of C.J. failed because the well-pleaded facts in the amended complaint demonstrated the Defendants' actions were rationally related to the legitimate state purpose of disciplining students who violate school rules. *See generally San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 44 (1973); *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985). The district court recognized, however, that the "rational relationship" test did not apply to the extent the Jensens had coupled their parental-right claim with a free-exercise-of-religion claim. Nevertheless, other than broadly stating that the actions of the Defendants "interfered with their ability to live what they believe is the best way to fulfill their moral duty to God regarding C.J. by providing for his social and moral development" the Plaintiffs' amended complaint failed to identify any specific religious belief that was infringed by the Defendants during the events surrounding the suspension of C.J. Even assuming,

however, that the Jensens had successfully added a religious component to their parental-rights claim, the district court concluded the amended complaint still failed to state a claim. There was nothing in the complaint to indicate the actions of the Defendants were based on anything other than purely secular considerations that were content neutral and implemented in a reasonable manner. *See Dep't of Human Res. v. Smith*, 494 U.S. 872, 882 (1990) ("Respondents urge us to hold, quite simply, that when otherwise prohibitable conduct is accompanied by religious convictions, not only the convictions but the conduct itself must be free from governmental regulation. We have never held that, and decline to do so now.").

As to C.J.'s claim regarding injury to his reputational interests, the district court simply noted that something more than mere defamation must be involved in order to state a federal claim under 42 U.S.C. § 1983. *See Paul v. Davis*, 424 U.S. 693, 712 (1976). Because the Defendants provided C.J. all of the process due during the suspension-decision proceedings, the fact that other students were aware of the suspension could not, standing alone as it did, form the basis of an action for injury to reputation.

In their first amended complaint, the Plaintiffs asserted that Reeves violated their right to privacy, which right arose under the Fourth Amendment, the Fourteenth Amendment, and FERPA. The district court concluded that the

Plaintiffs' privacy claims based on the Fourth and Fourteenth Amendments failed to state a claim because Reeves' investigation of the complaints against C.J. was reasonable and Reeves' suspension decision was made in conformity with *Lopez*. The district court concluded that the Plaintiffs' privacy claims based on FERPA failed to state a claim because: (1) Reeves' alleged disclosure to the parents of children involved as victims or witnesses did not constitute a prohibited disclosure of an educational record under 20 U.S.C. § 1232g; (2) FERPA only regulates the release of records pursuant to a policy or practice and there was nothing in the complaint to indicate Reeves' disclosures were pursuant to such a policy or practice; and (3) FERPA does not create a private cause of action enforceable under § 1983.

The district court dismissed the Plaintiffs' claims relating to their right to petition the government for redress of grievances, noting that the chain-of-command comments attributable to the Defendants, even if they could be construed as critical of the Jensens' actions in contacting the Alpine School District Superintendent rather than Reeves, fell far short of an infringement of the Jensens' right to petition for redress of grievances.

This court reviews the sufficiency of a complaint *de novo* and will affirm a 12(b)(6) dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sutton v.*

*Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quotations omitted). All well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the Plaintiffs. *See id.* Nevertheless, while this court must accept reasonable inferences derived from well-pleaded facts, we need not accept mere conclusions characterizing pleaded facts or "unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990) (quotations omitted).

This court has conducted a *de novo* review of the Plaintiffs' original and amended complaints, the district court's order of dismissal, and the parties' briefs and contentions on appeal. That review demonstrates that the district court's order of dismissal is comprehensive, thorough, and substantially correct. Accordingly, with the exception of the brief comments set out below with regard to the Plaintiffs' FERPA claims, this court affirms the district court's 12(b)(6) dismissal of the Plaintiffs' federal claims for substantially those reasons set forth in the district court's order of dismissal filed March 29, 1999.

We recognize that after the district court entered its order of dismissal this court issued its opinion in *Falvo v. Owasso Independent School District No. 1-001*, 233 F.3d 1203 (10th Cir. 2000). In *Falvo*, this court held that the provisions of FERPA can be privately enforced through an action brought pursuant to §

1983. *See id.* at 1211-13. Based on *Falvo*, this court specifically disavows any contrary conclusion expressed by the district court in dismissing the Plaintiffs' amended complaint. Nevertheless, this court concludes that the district court correctly dismissed the Plaintiffs' FERPA claims.

The Plaintiffs' complaint identifies two disclosures that purportedly implicate FERPA's privacy provisions. The first disclosure occurred on October 31, 1997, in a memorandum sent by Reeves to the parents of a female student named L.P. According to the amended complaint, "[t]he memorandum outlined what had been done in response to a harassment complaint that had been filed against C.J. The memorandum indicated that matters had been investigated in accordance with district policy and C.J. would lose his lunch privileges during the first week of November and be required to stay in the principal's office." Like the district court, we conclude that the contemporaneous disclosure to the parents of a victimized child of the results of any investigation and resulting disciplinary actions taken against an alleged child perpetrator does not constitute a release of an "education record" within the meaning of 20 U.S.C. § 1232g(a)(4)(A). Reading such disclosures to fall within the ambit of § 1232g would place educators in an untenable position: they could not adequately convey to the parents of affected students that adequate steps were being undertaken to assure the safety of the student. Nor do we think that such a targeted, discrete,

contemporaneous disclosure fits within the bounds of the plain language of §

1232g(a)(4)(A).  Finally, we note that this particular disclosure is completely

unlike the broad, routinized disclosures of student grades at issue in *Falvo*.  *See*

233 F.3d at 1207.

The second disclosure set out in the Plaintiffs' amended complaint related

to a separate playground incident that allegedly occurred on March 2, 1999.  The

amended complaint alleges that on March 4th, Reeves sent a series of memoranda

to "the parents of students who had claimed they had been hit or touched by C.J.

as well as other students who had reported were [sic] witnesses to the conduct of

C.J."  In both their appellate brief and at oral argument, the Plaintiffs emphasized

that this second disclosure went not only to the parents of the children allegedly

assaulted by C.J., but also to the parents of children who simply witnessed the

incident.  This court need not decide how a broader, yet still contemporaneous,

disclosure to the parents of children witnesses, in addition to the parents of

alleged victims, would affect the calculus set out above because the memoranda

identified in the amended complaint simply do not disclose anything that could

qualify as an education record under § 1232g(a)(4)(A).  Instead, the memoranda

all reflect the following information: (1) an incident allegedly occurred on the

playground involving C.J. and a number of other children; (2) C.J. was allegedly

verbally and/or physically abusive to several children during the incident; (3) each

addressee's child had been questioned about the incident and each reported C.J. had been abusive in some manner; (4) C.J. was informed that *if he had been abusive*, he must stop such behavior immediately; and (5) C.J. was warned that there were consequences for abusive behavior. As should be apparent, the memoranda identified in the complaint disclosed no more than the fact that the addressee's child had been involved in an alleged incident involving C.J., either as a victim or witness, and that the addressee's child had been questioned about the incident. The memoranda do not disclose whether C.J. was ultimately found to be at fault, whether he was punished, or, if so, what that punishment was. The Plaintiffs have not identified, and this court has not found, a single case holding that the extremely limited type of information conveyed here constitutes an education record under § 1232g. Accordingly, this court concludes that the district court did not err in dismissing the Plaintiffs' FERPA claim pursuant to Fed. R. Civ. P. 12(b)(6).

Having concluded that the district court properly dismissed the Plaintiffs' federal claims, we must move on to address the propriety of the district court's decision to address the Plaintiffs' state claims on the merits. On appeal, the Plaintiffs raise the following three primary contentions: (1) the district court abused its discretion in reaching the merits of their state claims after having dismissed all federal claims; (2) the district court erred in concluding that the

-12-

state claims were barred because of the Plaintiffs' failure to comply with the notice-of-claim provisions of the Governmental Immunity Act (the "Act"), Utah Code Ann. §§ 63-30-11, 63-30-13; and (3) even assuming their failure to file a notice of claim barred their action for money damages, their claims for declaratory and equitable relief were unaffected by the Act's notice-of-claim provisions.

Citing to this court's opinion in *Bauchman ex rel. Bauchman v. West High School*, 132 F.3d 542, 549-50 (10th Cir. 1997), the Plaintiffs assert that the district court erred in reaching the merits of their state law claims after dismissing their federal claims on the pleadings. Although *Bauchman* noted a general preference in favor of dismissing state claims without prejudice when federal claims are dismissed on the pleadings, it noted that district courts retain discretion to reach the merits of pendent state claims. *See id.* at 549. On appeal, this court analyzes only whether the district court abused that discretion. *See id.* at 550. In this circuit, abuse of discretion is defined as "an arbitrary, capricious, whimsical , or manifestly unreasonable judgment." *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999). Upon review of the record, keeping in mind those factors identified by the court in *Bauchman*, we conclude that the district court did not abuse its discretion in reaching the merits of the state claims. *See* 132 F.3d at 549 ("Pendent jurisdiction is exercised on a discretionary basis, keeping in

mind considerations of judicial economy, convenience and fairness to the litigants."). In particular, as briefly set forth below, this court agrees with the district court's resolution of the Plaintiffs' state claims and with the district court's observation that the Plaintiffs' state claims are not as novel as Plaintiffs would paint them.

Under the provisions of the Act, all claims against a political subdivision and its employees are barred unless a notice of claim is filed with the appropriate entity within one year after the claim against that entity or its employees arises. *See* Utah Code Ann. § 63-30-13. It is uncontested that the Plaintiffs never filed a notice of claim. Citing the Utah Supreme Court's decision in *Bott v. DeLand*, 922 P.2d 732 (Utah 1996), the Plaintiffs argued before the district court that because their claims arose under the Utah Constitution, the Act and its notice-of-claim provisions did not apply. In rejecting this argument, the district court first recognized that *Bott* did stand for the proposition that governmental entities cannot use governmental immunity to shield themselves from liability for violations of the Utah Constitution. *See id.* at 736. Nevertheless, the district court concluded that *Bott* could not be reasonably read for the proposition that none of the provisions of the Act, including its purely procedural requirements, apply to claims arising under the Utah Constitution. Instead, relying on the plain language of the Act, the district court concluded that the Act's notice-of-claim

-14-

provisions applied to all claims against a governmental entity and its employees. *See* Utah Code Ann. §§ 63-30-2(1), -11.

On appeal, the Plaintiffs reassert the same arguments raised before the district court. Like the district court, this court does not read *Bott* as standing for the broad proposition advanced by the Plaintiffs. In fact, the court in *Bott* specifically recognized that the legislature could impose rules and regulations regarding remedies for constitutional violations, as long as those rules do not unreasonably impair the constitutional right at issue. *See* 922 P.2d at 736. Plaintiffs never asserted before the district court that the Act's notice-of-claim provisions constitute an unreasonable impairment. Furthermore, it is worth noting that the Act specifically provides that constitutional claims involving the taking of private property without just compensation are governed by the Act. *See* Utah Code Ann. § 63-30-10.5. This belies the Plaintiffs' assertion that the Utah legislature never intended that claims based on the Utah Constitution be governed by the provisions of the Act.

Finally, Plaintiffs contend that even assuming their claims for money damages are barred by their failure to file a notice of claim, the district court erred in dismissing with prejudice their state claims for declaratory and equitable relief. *See id.* § 63-30-2(1) (defining claim for purposes of the Act as "any claim or cause of action for money or damages"); *id.* § 63-30-13 ("A *claim* against a

political subdivision, or against its employees for an act or omission occurring during the performance of the employee's duties . . . is barred unless notice of claim is filed with the governing body of the political subdivision . . . within one year after the claim arises." (emphasis added)). This court has scoured the appellate record and concludes that this argument was never advanced before the district court. The Plaintiffs' filings before the district court only vaguely reference the fact that their state claims contained equitable and declaratory elements. Those filings, however, never indicated any specific legal basis for treating the equitable claims differently from the damages claims. Because the Plaintiffs failed to adequately raise this argument before the district court, we will not consider the question for the first time on appeal. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992).[1]

---

[1]We reach the same resolution as to the Plaintiffs' claims that (1) C.J.'s time for filing a notice of appeal has not expired because of his minority and (2) the district court should have liberally read their complaint as stating a claim that the individual employees acted in a fraudulent or malicious fashion thereby obviating the need to file a notice of claim. Because these arguments were not raised before the district court, this court will not consider them on appeal.

The judgment of the United States District Court for the District of Utah dismissing the Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) is hereby **AFFIRMED**.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge